UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MC SWAIN,

        Petitioner,

v.                                       CASE NO. 05-CV-74143-DT
                                       HONORABLE GERALD E. ROSEN

JERI-ANN SHERRY,

        Respondent.
_____/

# OPINION AND ORDER
## (1) GRANTING PETITIONER'S SECOND MOTION TO AMEND,
## (2) DENYING THE HABEAS CORPUS PETITION,
## (3) GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
## (4) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Mark McSwain has filed a *pro se* habeas corpus petition, challenging his state convictions for armed robbery and two firearm offenses. Petitioner alleges that (1) the main prosecution witness's recantation was not properly investigated, (2) the evidence was insufficient to sustain the convictions, and (3) the prosecutor vouched for the credibility of witnesses during closing arguments. The first and second claims lack merit, and the third claim is procedurally defaulted. Therefore, the habeas petition will be denied.

**I. Background**

The charges against Petitioner arose from an armed robbery that occurred on November 6, 2002, behind Legends Coney Island on West Seven Mile Road in Detroit, Michigan. As explained by the Michigan Court of Appeals,

> [t]he main prosecution witness [Deshaun Bryan] testified that he and his cousin were approaching the eatery when two men accosted them with guns. The complainant identified [Petitioner] as the man who pointed a gun at his cousin's

> head. The assailants took from the complainant his gray coat, ten dollars, and several other items. According to the complainant, several weeks later he was at work and spotted [Petitioner] in line as a temporary worker, wearing the gray coat that had been taken from him.

*People v. McSwain*, No. 249206, 2004 WL 2827671, at *1 (Mich. Ct. App. Dec. 9, 2004). After Mr. Bryant made eye contact with Petitioner at work, he observed Petitioner exit the building. Petitioner returned about an hour later without the coat even though it was cold outside. Mr. Bryant then identified Petitioner to a security officer. The police took Petitioner into custody later that day.

Petitioner's girlfriend, Paulette Montgomery, and the married couple with whom she and Petitioner were living in the early part of November 2002, testified that they ate dinner with Petitioner on the night of the robbery. Petitioner was excited about starting a new job the next day, and he retired to his and Paulette's room after dinner, which was always served between 6:00 and 8:00 p.m.

Petitioner testified that he did not leave the house after dinner. He left home early the next morning to catch a bus, and he arrived at his new job with Technicolor by 5:00 a.m. A records custodian for the company that handled Technicolor's payroll confirmed that Petitioner signed in at Technicolor about 5:00 a.m. on November 7, 2002, his first day of employment.

Petitioner denied robbing anybody on November 6, 2002, and he claimed that he was not even near Legends Coney Island that evening. He also testified that he bought the coat in question from a friend in August of 2002 and that, on the day of his arrest, he stored the coat in a friend's car after checking in at Technicolor.

Petitioner's parents also testified that Petitioner acquired his gray coat in August of 2002. They claimed that Petitioner had asked them to store the coat in their home.

2

Police Officer Maria Almanza testified that Petitioner informed her during an interview on December 25, 2002, that he owned a 1985 blue Chevy Camaro. She located the car in Technicolor's parking lot where it had been parked since the day of Petitioner's arrest. There was no coat in the car.

Officer Almanza also testified that some of the defense witnesses who had testified at trial were people that she had tried to contact before trial. With the exception of Paulette Montgomery, none of the witnesses returned her calls. Ms. Montgomery declined to make a statement on the advice of defense counsel.

Defense counsel argued to the jury that DeShaun Bryant made an honest mistake when he identified Petitioner as one of the two men who robbed him and his cousin. The jury, however, found Petitioner guilty, as charged, of armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750. 227b. On May 22, 2003, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twelve to thirty years for the armed robbery and one to five years for being a felon in possession of a firearm.

In an appeal of right filed through counsel, Petitioner challenged the sufficiency of the evidence. In a *pro se* supplemental brief and motion to remand, he claimed that the prosecutor vouched for the witnesses, defense counsel failed to investigate the facts and call witnesses, and the prosecutor refused to investigate the putative victim's recantation of his testimony. The Michigan Court of Appeals denied Petitioner's motion to remand and affirmed his convictions in an unpublished decision. *See People v. McSwain*, No. 249206 (Mich. Ct. App. Aug. 30, 2004,

and Dec. 9, 2004). On August 30, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. McSwain*, 474 Mich. 853; 702 N.W.2d 583 (2005) (table).

Petitioner filed his habeas corpus petition on October 28, 2005. Before Respondent could file an answer, Petitioner asked to have his case held in abeyance so that he could return to state court to pursue additional state remedies. The Court granted Petitioner's request and closed his case for administrative purposes.

Petitioner filed an unsuccessful motion for relief from judgment in state court. On appeal from the trial court's decision, he argued that his trial attorney failed to assert an alibi defense and that his appellate attorney was ineffective for not raising a claim about trial counsel. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. McSwain*, No. 273351 (Mich. Ct. App. Apr. 25, 2007). Petitioner's subsequent appeal to the Michigan Supreme Court was rejected as untimely on August 24, 2007.

On October 12, 2007, Petitioner filed an amended habeas corpus petition, which sets forth the following three claims:

I. Petitioner was denied his Sixth Amendment right [to effective assistance] of trial counsel[] who failed to call witnesses & failed to investigate facts[.] [A]lso the prosecutor[']s refusal to investigate the putative victim[']s recantation of his testimony in this case is prosecutorial misconduct.

II. [D]efense counsel & [the] prosecutor . . . both violated this Petitioner[']s state & federal constitutional rights w[h]ere the prosecution[']s evidence that Petitioner was the perpetrator was either insufficient or against [the] great weight of the evidence. . . .

III. [The] prosecutor violated Petitioner[']s state & federal

4

constitutional Due Process rights to a fair trial when he improperly vouched for the credibility of witnesses during his closing arguments.

Respondent has filed an answer in opposition to the amended habeas petition, and Petitioner has filed a reply. Also pending before the Court is Petitioner's second motion to amend, which seeks to supplement Petitioner's reply brief with the affidavits of Paulette Montgomery and Richard McSwain. The affidavits are accepted and Petitioner's motion [Dkt. 20, July 3, 3008] is GRANTED.

## II. Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

5

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## III. Discussion

### A. Failure to Call Witnesses and Discloses a Witness's Recantation

Petitioner alleges that his trial attorney was ineffective for failing to investigate the facts and call witnesses and that the prosecutor committed misconduct by refusing to investigate DeShaun Bryant's recantation of his trial testimony. The state appellate courts did not address the merits of these issues.[1] Therefore, the deferential standard of § 2254(d) does not apply, and review is *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

Prosecutors have a duty to disclose material evidence favorable to the defendant, *Brady*

---

[1] Petitioner raised the claim about trial counsel in a motion to remand, which he filed in the Michigan Court of Appeals. He also raised the claim in his subsequent appeal to the Michigan Supreme Court. The court of appeals denied his motion to remand, and the state supreme court denied leave to appeal.

Respondent maintains that Petitioner did not raise his related claim about the prosecutor in any state court. The record, however, indicates that Petitioner raised the issue in a *pro se* supplemental brief in the Michigan Court of Appeals and in an amended application for leave to appeal in the Michigan Supreme Court. Neither appellate court addressed the issue on the merits.

Even if Petitioner did not exhaust state remedies for all his claims, as required by 28 U.S.C. § 2254(b)(1), the claim lacks merit. The Court may deny his habeas petition despite the alleged alleged failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2).

*v.*

*Maryland*, 373 U.S. 83, 87 (1963), and attorneys have an "obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "In assessing the reasonableness of an attorney's investigation . . . , a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527.

### 1. DeShaun Bryant

Petitioner complains that his trial attorney and the prosecuting attorney failed to investigate and produce the complaining witness, DeShaun Bryant, who supposedly recanted his incriminating trial testimony. Petitioner has not produced an affidavit from Mr. Bryant stating that he mistakenly identified Petitioner as one of the robbers.[2] The record, however, contains two indications that Mr. Bryant may have recanted his trial testimony.

On October 2, 2003, Petitioner's trial attorney, John J. Cibrario, made the following remarks in a letter to the prosecuting attorney:

> As discussed with you prior, I understand the complaining witness in this regard has since recanted but fears criminal sanctions (i.e. perjury charges, etc.), if he

---

[2] Even if Petitioner could produce such an affidavit, a witness's recanting affidavit is considered extremely suspicious. *United States v. Willis,* 257 F.3d 636, 645 (6th Cir. 2001); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991).

> were to come forward. More specifically, I understand that DeShaun Bryant
> spoke to a witness about coming forward with the truth on the date Mr. McSwain
> was to be sentenced, but feared criminal exposure.

*See* Petitioner-Movant's Reply Brief to Rebut the Respondent's Brief and Arguments, Affidavits and Letters from Attorney. Mr. Cibrario went on to say that Petitioner currently was represented by appellate counsel. He asked the prosecutor to administer a polygraph examination to Petitioner and to explore Mr. Bryant's recantation. Petitioner alleges that the prosecutor did not respond to Mr. Cibrario's letter.

The only other evidence that Mr. Bryant may have recanted his trial testimony is Paulette Montgomery's affidavit, which is dated May 23, 2008. Ms. Montgomery states in her affidavit that DeShaun Bryant informed her over the telephone that he made a mistake when he identified Petitioner as the person who robbed him and that he wanted to recant his trial testimony. Ms. Montgomery also states in her affidavit that she informed Petitioner's attorney what DeShaun Bryan told her. She does not say when she had this conversation with Mr. Bryant, and there is no indication in the record as to when defense counsel and the prosecutor first learned of Mr. Bryant's alleged recantation.

Mr. Montgomery's affidavit is suspect because she signed it years after Mr. Cibrario claimed to have heard about the complaining witness's recantation. Also, Ms. Montgomery is not an unbiased affiant. She was Petitioner's girlfriend, and pregnant with his child, at the time of trial.

The prosecutor, moreover, informed the trial court at Petitioner's sentencing on May 22, 2003, that members of Petitioner's family had contacted DeShaun Bryant and implored him to appear in court and change his story. According to the prosecutor, Mr. Bryant maintained that

8

Petitioner robbed him, and he requested that there be no contact between Petitioner's family and himself. He declined to appear at Petitioner's sentencing partly for this reason. (Tr. May 22, 2003, at 5.) Although Petitioner maintained his innocence at his sentencing, he did not respond to the prosecutor's comment that members of his family had tried to persuade DeShaun Bryant to recant his trial testimony.

Mr. Cabrario subsequently informed the prosecutor in his letter of October 23, 2003, that it was his understanding the complaining witness had recanted. It was reasonable for Mr. Cibrario not to investigate the matter further because Mr. Bryant apparently did not contact him for the purpose of recanting his testimony. It appears that Mr. Cibrario had only hearsay evidence that Mr. Bryant recanted his trial testimony. Furthermore, there was reason to believe from the prosecutor's comments at sentencing that Petitioner's family might have pressured Mr. Bryant to recant his testimony. Finally, the alleged recantation apparently occurred after Petitioner's sentencing when Mr. Cabrario no longer represented Petitioner. The Court concludes that Mr. Cabrario was not ineffective for failing to further investigate the alleged recantation.

Petitioner's claim about the prosecutor also fails. It appears from Mr. Cibrario's letter to the prosecutor that Mr. Cibrario knew as much, or more, about the alleged recantation as the prosecutor. "*Brady* does not apply to information that is not wholly within the control of the prosecution . . . because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *see also Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) (holding that *Brady* did not apply because the petitioner was able to obtain the evidence from sources other than the state). Therefore, Petitioner has not stated a true *Brady*

9

claim.

### 2. Danielle and Reggie

Petitioner states in affidavits signed in 2004 and in 2008 that, before trial, he informed his trial attorney about "Reggie." According to Petitioner's affidavits, Reggie would have testified that Petitioner was with him on the day of the robbery and that Petitioner went home after he (Petitioner) received a telephone call directing him to report to work the next day.

Reggie's testimony would not have helped Petitioner because it did not account for Petitioner's whereabouts at the time of the robbery. Petitioner testified that he received the telephone call from Technicolor about 5:30 or 6:00 p.m. on November 6, 2002. The robbery occurred about 8:00 p.m. that night, long after Petitioner supposedly left Reggie, went home, and ate dinner.

Petitioner's affidavits state that Danielle Nora would have testified that she permitted Petitioner to place his coat in her car on a daily basis and that she had seen him with the coat before November 6, 2002. Danielle's testimony that Petitioner owned the coat prior to the robbery would have been cumulative evidence. As noted, Petitioner's parents also testified that Petitioner owned the coat before November 6, 2002, and even DeShaun Bryant admitted at one point during trial that the coat he saw Petitioner wearing at Technicolor may not have been his coat. Defense counsel was not constitutionally ineffective for failing to call a witness whose testimony would have been corroborative or cumulative evidence. *Snow v. Sirmons*, 474 F.3d 693, 729 (10th Cir. 2007) (collecting cases).

Danielle's testimony that Petitioner stored the coat in her car during working hours would have been questionable evidence because Officer Maria Almanza testified that Petitioner

10

admitted to driving his own car to work on the day of his arrest. It made no sense for Petitioner to store his coat in Danielle's car when he could have locked it in his own car or used one of the lockers that were available to employees at Technicolor.

To conclude, Petitioner has failed to show that his attorney was ineffective for failing to produce Danielle or Reggie and for failing to further investigate DeShaun Bryant's alleged recantation. Petitioner also has failed to show that the prosecutor committed misconduct by not disclosing Mr. Bryant's alleged recantation. Petitioner's constitutional rights were not violated by the omissions, and the state appellate courts' orders did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent.

**B. The Sufficiency of the Evidence**

The second habeas claim alleges that the prosecution's case was insufficient to support the convictions or was against the great weight of the evidence. Petitioner alleges that there no evidence, circumstantial or direct, physical or otherwise, to corroborate DeShaun Bryant's eyewitness testimony about the robbery.

A federal habeas court has no power to grant habeas corpus relief on the ground that a state conviction is against the weight of the evidence. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985). The only question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Petitioner is not claiming that the prosecution failed to prove the elements of the crimes. He is alleging that he was mistakenly identified as one of the armed robbers.

DeShaun Bryant testified that he observed Petitioner place a gun at the back of Robert

11

Woods' head and empty Robert Woods' pockets while the second perpetrator took DeShaun's coat and other personal belongings. Although Mr. Bryant had never seen Petitioner before this incident, he had no doubt that Petitioner was one of the robbers. He claimed that he stared at Petitioner for about fifteen to twenty seconds during the robbery and that there was no hat or hood covering his face.

Petitioner points out that Robert Woods was unable to identify the robbers and that DeShaun Bryant admitted at trial that the coat Petitioner was wearing on the day of his arrest may not have been Mr. Bryant's coat. Petitioner also claims that DeShawn Bryant's description of him differed from his actual appearance. Mr. Bryant testified that the man had bumpy skin and no facial hair. Petitioner maintains that he wore a goatee at the time and did not have a history of acne or bumpy skin.

These weaknesses in the prosecution's case were brought to the jury's attention, and a reviewing court may "not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the [factfinder]. It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citing *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983), and *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)). Stated differently, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Furthermore, the testimony of a single eyewitness is sufficient to support a conviction. *See United States v. Tipton*, 11 F.3d 602, 609 (6th Cir. 1993) (concluding that the evidence was sufficient to support the convictions where the only evidence against the defendant was the testimony of the victim, who saw her assailant for only a few

seconds at night while struggling with the assailant over a gun).

A rational trier of fact could have concluded from the evidence that Petitioner was one of the two gunmen who robbed DeShaun Bryant and Robert Woods. Therefore, the state appellate court's conclusion that Petitioner's sufficiency-of-the-evidence argument lacked merit did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

**C. The Prosecutor**

The third and final habeas claim alleges that the prosecutor vouched for the credibility of his witnesses during closing arguments. Respondent contends that review of this claim is barred by Petitioner's failure to object at trial.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make timely and specific objections at trial in order to preserve their claims for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).

Petitioner did not object to the prosecutor's closing arguments at trial. Consequently, the Michigan Court of Appeals reviewed his claim for "plain error." The state appellate court's review for "plain error" constituted enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The contemporaneous-objection rule was

13

an adequate and independent state ground for denying relief because the rule was in effect long before Petitioner's trial in 2003. Therefore, Petitioner must establish "cause and prejudice" or a "miscarriage of justice" before this Court can consider the substantive merits of his claims.

Petitioner maintains that he is innocent and that it would be a miscarriage of justice if the Court did not excuse his procedural default. The narrow exception for fundamental miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 488, 496 (1986). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324.

As previously explained, Paulette Montgomery has stated in an affidavit that the main prosecution witness admitted to her that he identified the wrong person and that he wanted to recant his trial testimony. Ms. Montgomery's affidavit is suspect and disfavored because it is hearsay and because her statements were obtained without the benefit of cross-examination and an opportunity to make credibility determinations. *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

Petitioner has not presented any other new evidence that more likely than not would cause a reasonable juror to have a reasonable doubt about his guilt or innocence. Therefore, his actual- innocence claim is not credible, and a miscarriage of justice will not occur as a result of the Court's failure to consider the merits of Petitioner's claim about the prosecutor's closing arguments.

**IV. Conclusion**

The state courts' resolutions of Petitioner's claims did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, the amended petition for a writ of habeas corpus [Dkt. 10, Oct. 12, 2007] is **DENIED**.

The Court **DECLINES** to issue a certificate of appealability on claims II and III, because the issues do not warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004) (citing *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003)). The Court **GRANTS** a certificate of appealability on Petitioner's first claim regarding DeShaun Bryant's alleged recantation, because reasonable jurists could debate the Court's assessment of that claim. Petitioner may appeal this Court's decision *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

s/Gerald E. Rosen
United States District Judge

Dated: October 22, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 22, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager